UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RITA MORRISSEY,

      Plaintiff,

v

LAUREL HEALTH CARE COMPANY, a
Foreign Profit Corporation, and OAK PARK
HEALTH CARE INVESTORS OF
COLDWATER, INC. d/b/a THE LAURELS
OF COLDWATER and d/b/a CARRIAGE
INN CONVALESCENT CENTER, a
Domestic Profit Corporation, Defendants,

      Defendant.

_____/

Civil Case No.: 17-CV-00089

Honorable Janet T. Neff

Magistrate Judge Ellen S. Carmody


**\*\*ORAL ARGUMENT REQUESTED\*\***


**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**BRIEF IN SUPPORT**

**CERTIFICATE OF SERVICE**

**EXHIBITS**


KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

Karen B. Berkery P38698
Zeth D. Hearld P79725
Attorneys for Defendants Laurel Health
Care Company and Oak Park Health
Care Investors of Coldwater, Inc.
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
313-965-7448
zeth.hearld@kitch.com

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

NOW COME the Defendants, LAUREL HEALTH CARE COMPANY and OAK HEALTH CARE INVESTORS OF COLDWATER, INC., by and through their attorneys, KITCH DRUTCHAS WAGNER VALITUTTI & SHERBROOK, and for their Motion for Summary Judgment, state as follows:

1.      On February 21, 2017, Rita Morrissey ("Plaintiff") filed her Amended Complaint alleging violations of the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

2.      Plaintiff was employed as a licensed practical nurse by the Laurels of Coldwater ("Coldwater") from November 2001 through February 4, 2016, when she abandoned her patients and walked off the job prior to the conclusion of her shift.

3.      Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted and/or there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law with respect to each count.

4.      There is no genuine issue of material fact with respect to Plaintiff's claims under the ADA, as plaintiff did not have a disability or any valid medical restrictions. Even if Plaintiff were disabled, Defendants did not know about her alleged disabilities as her most recent physician notes from 2015 release her to work without restrictions.

5.      Plaintiff never engaged in any protected activity under the ADA and Defendants never retaliated against her in any way.

6.      Plaintiff did not suffer an adverse employment action as she willfully abandoned her job.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

7.      Similarly, there is no genuine issue of material fact with respect to Plaintiff's claims under the PWDCRA, as Plaintiff was not disabled as defined by the Act, nor was she perceived as disabled by Defendants.

8.      Plaintiff did not engage in any protected activity under the PWDCRA and Defendants did not retaliate against her in any way.

9.      Plaintiff did not suffer an adverse employment action as she willfully abandoned her job.

WHEREFORE, Defendants respectfully request that this honorable Court GRANT Defendants' Motion for Summary Judgment, dismiss Plaintiff's Complaint with prejudice, and award costs and attorney fees to these Defendants most unjustly sustained.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By:    /s/Zeth D. Hearld
       Karen B. Berkery P38698
       Zeth D. Hearld P79725
       Attorneys for Defendants Laurel Health Care
       Co. and Oak Park Health Care Investors Of
       Coldwater
       One Woodward Avenue, Suite 2400
       Detroit, MI 48226-5485
       313-965-7935
       karen.berkery@kitch.com
Dated:  January 31, 2018             zeth.hearld@kitch.com

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RITA MORRISSEY,

       Plaintiff,

v

LAUREL HEALTH CARE COMPANY, a
Foreign Profit Corporation, and OAK PARK
HEALTH CARE INVESTORS OF
COLDWATER, INC. d/b/a THE LAURELS
OF COLDWATER and d/b/a CARRIAGE
INN CONVALESCENT CENTER, a
Domestic Profit Corporation, Defendants,

       Defendant.

_____/

Civil Case No.: 17-CV-00089

Honorable Janet T. Neff

**<u>BRIEF IN SUPPORT OF MOTION</u>**

**\*\*ORAL ARGUMENT REQUESTED\*\***

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-6485

(313) 965-7900

## TABLE OF CONTENTS

INDEX OF EXHIBITS.................................................................III

STATEMENT OF ISSUES PRESENTED .................................... VI

CONTROLLING AUTHORITY ................................................VII

FACTS.......................................................................................1

    I.    Introduction................................................................ 1

    II.    Plaintiff's Alleged Disabilities and Accommodations................. 1

    III.    Plaintiff's Job Abandonment ....................................... 2

    IV.    Mandating & Work Schedules ..................................... 3

    V.    Coldwater's Disability Policies ..................................... 5

ARGUMENT ............................................................................6

I.    PLAINTIFF IS UNABLE TO ESTABLISH A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION UNDER THE ADA ...........................................................7

    A.    Plaintiff is not disabled under the ADA. ...................7

    B.    Defendants did not perceive Plaintiff as disabled ................... 11

    C.    Plaintiff did not suffer any adverse employment actions ........ 12

II.    PLAINTIFF HAS FAILED TO STATE A CLAIM OF RETALIATION UNDER THE ADA....................................14

    A.    Plaintiff was not engaged in protected activity and did not suffer an adverse employment action........................... 14

III.    PLAINTIFF IS UNABLE TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION UNDER THE PWDCRA..........................................................................16

    A.    Plaintiff is not disabled as defined by the PWDCRA ............. 17

    B.    Plaintiff's alleged physical condition did not substantially limit a major life activity ................... 19

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

i

     **C.**     **Plaintiff cannot establish that she was perceived as disabled** .................. 22

**IV.**     **PLAINTIFF WAS NOT DISCRIMINATED AGAINST UNDER THE PWDCRA** ........................................................................**22**

**V.**     **PLAINTIFF CANNOT SUCCEED ON A FAILURE TO ACCOMMODATE CLAIM UNDER THE PWDCRA AS SHE NEVER REQUESTED AN ACCOMMODATION IN WRITING** ...........................................................................................**24**

**VI.**     **PLAINTIFF HAS FAILED TO STATE A CLAIM OF RETALIATION UNDER THE PWDCRA** .........................................**24**

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

## INDEX OF EXHIBITS

**Cases**

*Aho v. Dep't of Corrections*
  264 Mich App 281 (2004) ........................................................................ 25

*Ayer v. Hare Express, Inc.*
  No. 243228, 2004 Mich. App. LEXIS 104 (Ct. App. Jan. 15, 2004) ................................ 21, 24

*Azzam v. Baptist Healthcare Affiliates, Inc.*
  855 F. Supp. 2d 653 (W.D. Ky. 2012) ........................................................ 8, 9

*Bageris v. Brandon Township*
  264 Mich. App. 156 (2004) .................................................................... 24

*Booker v. Brown & Williamson Tobacco Co., Inc.*
  879 F.2d 1304 (6th Cir 1989) ................................................................ 15, 16

*Brenneman v. MedCentral Health Sys.*
  366 F.3d 412 (2004) .......................................................................... 7

*Celotex Corp. v. Catret*
  477 U.S. 317 (1986) .......................................................................... 6

*Chavez v. Waterford Sch. Dist.*
  720 F. Supp. 2d 845 (E.D. Mich. 2010) ....................................................... 13, 23

*Chiles v Machine Shop, Inc*
  238 Mich App 462 (1999) ................................................................. passim

*Chimielewski v Xermac, Inc*
  216 Mich App 707 (1996) ...................................................................... 19

*Cotter v. Ajilon Servs, Inc.*
  287 F.3d 593 (6th Cir. 2002) ................................................................. 8

*Cummings v. Dean Transp., Inc.,*
  9 F. Supp. 3d 795 (E.D. Mich. 2014) .......................................................... 7

*Doren v. Battle Creek Health Sys.*
  187 F.3d 595 (6th Cir. 1999) ................................................................ 9, 10

*Falcone v. City of Warren*
  581 F. Supp. 2d 841 (E.D. Mich. 2008) ........................................................ 14

*Galford*
  2004 Mich App LEXIS at *11 ................................................................... 20

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-6485

(313) 965-7900

*Garlock v. Ohio Bell Tel. Co.*
  2015 U.S. Dist. LEXIS 131231 (N.D. Ohio Sep. 29, 2015) .......................................... 8, 10, 11

*Gruener v Ohio Cas. Ins. Co.*
  510 F3d 661 (6th Cir. 2008) ................................................................................ 7

*Harris v. Bormans, Inc*
  170 Mich. App. 836 (1998) ................................................................................ 24

*Hoskins v. Oakland Cty. Sheriff's Dep't*
  44 F. Supp. 2d 882 (E.D. Mich. 1999) ............................................................... 13

*Kahriman v. Wal-Mart Stores*
  115 F. Supp. 3d 153 (D. Mass. 2015) ................................................................ 14

*Kolpas v G D Searle & Co*
  959 F Supp 525 (ND Ill 1997) ........................................................................... 21

*LaPointe v United Autoworkers Local 600*
  103 F3d 485 (1996) ........................................................................................... 23

*Linser v. Dep't of Mental Health*
  200 U.S. App. LEXIS 25644 (6th Cir. 2000) ....................................................... 8

*Lown v JJ Eaton Place*
  235 Mich App 721 (1999) ......................................................................... 18, 19, 20

*Muthler v. Ann Arbor Machine, Inc.*
  18 F. Supp. 2d 722 (E.D. Mich. 1998) ................................................................ 11

*Peden v. City of Detroit*
  470 Mich. 195, 680 N.W.2d 857 (2004) .............................................................. 17

*Rorrer v. City of Stow*
  743 F.3d 1025 (6th Cir. 2014) ............................................................................ 15

*Stevens v Inland Waters, Inc*
  220 Mich App 212 (1996) .......................................................................... 19, 20

*Vagts v Perry Drugs Stores, Inc*
  204 Mich App 481 (1994) ................................................................................ 23

*Wardia v Campbell County Reg. Justice Dept. Of Corrections*
  No. 12-5337 (6th Cir.  2013) ............................................................................ 13

**Statutes**

42 U.S.C. § 1202(2) ............................................................................................ 7

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

MCL 37.1103(d) ............................................................................................................ 17

MCL 37.1210(18) .......................................................................................................... 24

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................ 6

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Does Plaintiff fail to raise a genuine issue of material fact regarding her claims of discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act?

   Plaintiff Answers: No.
   Defendants Answer: Yes.

2. Does Plaintiff fail to raise a genuine issue of material fact regarding her claims of discrimination, failure to accommodate, and retaliation under Michigan Persons with Disabilities Civil Rights Act?

   Plaintiff Answers: No.
   Defendants Answer: Yes.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-6485

(313) 965-7900

vi

## **CONTROLLING AUTHORITY**

Defendants rely on *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (2004) and additional case law cited herein for the proposition that Plaintiff is not disabled under the Americans with Disabilities Act, and that even if she were disabled for purposes of the act, she did not suffer an adverse employment action and was not discriminated against.

Defendants rely on *Falcone v. City of Warren*, 581 F. Supp. 2d 841 (E.D. Mich. 2008) and the additional case law cited herein for the proposition that Plaintiff was not engaged in protected activity under the Americans with Disabilities Act and was not retaliated against.

Defendants rely on *Peden v. City of Detroit*, 470 Mich. 195, 680 N.W.2d 857 (2004) and the additional case law cited herein for the proposition that Plaintiff is not disabled under the Michigan Persons with Disabilities Civil Rights Act, and that even if she were disabled for the purposes of the act, she did not suffer an adverse employment action and was not discriminated against.

Defendants rely on *Aho v. Dep't of Corrections*, 264 Mich App 281 (2004) and the additional case law cited herein for the proposition that Plaintiff was not engaged in protected activity under the Michigan Persons with Disabilities Civil Rights Act and was not retaliated against.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

vii

## FACTS

### I.    Introduction

On February 4, 2016, Plaintiff learned that she might have to work late.  She was scheduled to work from 6:00 am to 6:00 pm—the same schedule she had been working throughout most of her tenure at The Laurels of Coldwater.  According to Plaintiff she found out that she may have to work late sometime in that afternoon.  Rather than wait to find out if she was actually needed, she packed up her things and left around 3:41 pm.  Had she bothered to stay at work and not abandon her job and patients, she would have learned that no one was required to work late that day.

Based on these underlying facts, Plaintiff brings suit alleging that she was discriminated against because of her alleged disability and retaliated against.  Interestingly, as of February 4, 2016, **Plaintiff had not had a work restriction in almost three years**.  The last restriction that she had—in April, 2013—limited her to working 12 hours a day, although it allowed her to volunteer for more hours in the event of a "weather emergency."  Putting aside the fact that this "restriction" does not state a *prima facie* case, it is clear that Plaintiff was not the victim of disability discrimination as she had no restriction in place when she abandoned her job and her patients.  Consequently, her case should be dismissed.

### II.    Plaintiff's Alleged Disabilities and Accommodations

Plaintiff alleges in her Complaint that she is disabled due to various conditions, including scoliosis, bulging discs, Ahlers Danlos Syndrome, and Buschke-Ollendorf Syndrome, all of which allegedly limit her ability to walk, stand, bend, and lift. (Def. Ex. A., Plaintiff's Complaint, ¶9). Plaintiff never advised Defendants of any of these conditions while employed. Plaintiff was a long term employee, and in 2012 she began submitting several physician notes

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

which limited her work hours. The first restriction note is an undated note from her primary care physician, Dr. Shipe, which limited her to no more than 12 hours per shift due to chronic back pain. (D. Ex. B, Dr. Shipe Note). On or about February 9, 2012, Plaintiff submitted a doctor's note from Physical Medicine Consultants and V. Jean Bradley, NP, which restricted her to eight hours of work with a maximum of four hours of overtime per day, and stated that she could volunteer to stay longer in the event of a "weather emergency;" the note was valid until her next office visit. (D. Ex. C, 2/09/2012 Note). The note from NP Bradley does not include any diagnoses or reason for the work hour restriction. On February 23, 2012, Plaintiff submitted a second note from NP Bradley which restricted her to a maximum of 12 hours per shift, with the ability to volunteer for more hours in the event of a weather emergency. The second note from NP Bradley again does not state why she has a restriction and states that the restriction is only valid until her next office visit. (D. Ex. D, 2/23/12 Note). Based on the medical records from Physical Medicine Consultants, Plaintiff's next visit was in April 2013. (D. Ex. E, PMC Records). There are no additional restriction notes from Physical Medicine Consultants or NP Bradley, nor did Plaintiff submit any additional work hour restriction notes after 2013.

In June 2015 Plaintiff was granted leave under the Family Medical Leave Act ("FMLA") for carpal tunnel release surgery in her wrists. (D. Ex. F, FMLA Paperwork, Joint Ex. 1, P's Dep, p93-95). Plaintiff returned to work in September 2015, and submitted a physician's note which stated she could work without any restrictions. (D. Ex. G, Dr. Whang Note). The note from 2015 was the final doctor's note that she submitted prior to abandoning her job.

### III.    Plaintiff's Job Abandonment

On January 31, 2016, Plaintiff was required to work over her 12 hour shift and worked 13.5 hours due to a shortage of nurses. At the time, Plaintiff did not have any restrictions in place

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

2

<u>and was not restricted from working over 12 hours.</u> On February 4, 2016, Plaintiff was scheduled to work a 12 hour shift, from 6:00 am to 6:00 pm. In the afternoon, she claims she was told by some unknown person that she *may* need to be mandated to work over her shift because another nurse called off her shift. Plaintiff received this information via third-person hearsay when "a CNA told me that Erin Marshall, who is an A Wing unit manager called down to the unit and said that I had to work 16 hours." (J. Ex.1, p120). When Plaintiff was told that she was possibly going to be required to stay late, the facility had calls out to find a volunteer to work the extra hours. (J. Ex. 2, p47). Plaintiff immediately went to the Director of Nursing ("DON"), Jeannine Hayes's office, and told her that she was not staying to work 16 hours and demanded that she count off her medications with her, which is an activity normally performed at the end of a shift. (J. Ex.1, p121-122). Ms. Hayes asked Plaintiff if she was leaving prior to the conclusion of her shift, and Plaintiff responded "yes." Ms. Hayes asked Plaintiff if she was quitting, and Plaintiff responded "yes." (J. Ex.2, p48-49). Plaintiff walked off the job at 3:41 p.m. (J. Ex.7, Punch Clock Records, 000553). At 3:41 p.m., no decision had been made as far as mandation. Plaintiff's shift was scheduled to end at 6:00 p.m.; by walking off the job, Plaintiff abandoned her patients and quit without notice. (J. Ex. 3, Erin Tuttle Dep Excerpt, p 57-58). Ms. Hayes immediately documented what had occurred. (D. Ex. H, Hayes Note).

Plaintiff claims that "everyone knew" she had work hour restrictions but neither the Administrator, Erin Tuttle, nor the DON, had any idea she had restrictions. (J. Ex. 3, p30). In fact, Ms. Hayes testified that the most recent note in her file stated she could work without restrictions. (J. Ex. 2, p65).

**IV.    Mandating & Work Schedules**

**Kitch Drutchas
Wagner Valitutti &
Sherbrook**
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

"Mandating" refers to situations where there is an uncovered shift that needs to be covered by holding over a nurse after the conclusion of her normally scheduled shift until a replacement is found. (J. Ex. 3, p13). Mandating is necessary in order to have sufficient staffing to care for the facility's patients. If a nurse leaves prior to the conclusion of her shift without another nurse to cover her hall and residents, then that nurse would be abandoning her patients. (J. Ex. 3, p32-33). The facility always attempts to find volunteers before mandating employees. (J. Ex. 2, p29-30). If no volunteer can be found, employees were mandated on a rotating basis. (J. Ex. 3, p20). Mandating is necessary to ensure that staffing levels meet or exceed the state minimum staffing requirements. Coldwater was always above the Michigan minimum staffing levels. (J. Ex. 3, Tuttle Dep, p 13, J. Ex. 4, p 33, Jeff Shepard Dep. Excerpt). In addition, mandating ensures that residents are able to have around the clock care; if an employee refuses to be mandated or work full shifts without finding a replacement, patients are at risk.

Coldwater has three different patient wings: A Wing, B Wing, and C Wing. In 2015, the facility changed some of its scheduling from 8 hour shifts to 12 hour shifts, and as a result some A and B Wing employees were scheduled to work 12 hour shifts and others worked 8 hour shifts. (J. Ex.2 p9, 39-40). C Wing, which is the dementia unit, remained all 8 hour shifts. When the facility changed to some 12 hour shifts, employees were allowed to select their desired wing and shift length based on seniority. As a long term employee, Plaintiff had a high level of seniority, and could have selected an eight hour shift if that was what she wanted. (J. Ex.2, p38-39). Plaintiff voluntarily elected to work 12 hour shifts knowing full well that she might be subject to mandation. From 2012 through February 4, 2016, Plaintiff worked over 12 hours on only eight

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-6485

(313) 965-7900

occasions and all but one time was for 15 minutes, most likely due to a late out punch on the time clock[1]. (J. Ex.7):

| Date | Hours Worked |
|------|--------------|
| July 21, 2012 | 12.25 (J.Ex.7 p 002548). |
| June 9, 2013 | 12.25 (J.Ex.7 p 002571). |
| Feb. 28, 2015 | 12.25 (J.Ex.7 p 002603). |
| Dec, 6, 2015 | 12.25 (J.Ex.7 p 002619). |
| Jan. 14, 2016 | 12.25 (J.Ex.7 p 002618). |
| Jan. 16, 2016 | 12.25 (J.Ex.7 p 000553). |
| Jan. 25, 2016 | 12.25 (J.Ex.7 p 000553). |
| Jan. 31, 2016 | 13.50 (J.Ex.7 p 000553). |

It is important to note that on the one day she worked any significant time over 12 hours that was more than a rounding error—January 31, 2016— that Plaintiff did not have any restrictions in effect at the time. (J.Ex.7 p000553).

## V.    Coldwater's Disability Policies

It is Coldwater's policy to comply with the Americans with Disabilities Act ("ADA") and state disability laws, and to honor all appropriate work restrictions. Employees were told that restrictions would be provided. (J. Ex. 3 p 27, J. Ex. 4, p38). Plaintiff never complained to Erin Tuttle, the administrator from September 2015 through August 2016, that she had to work extended hours under the mandation process, nor did she complain that she was not being accommodated as required by the ADA. (J. Ex. 3, p31). She frequently complained about her perceived issues with staffing levels, including an instance where she complained to Jeff Shepard, the Regional Manager of Operations, and Kristy Hibbard, a Unit Manager, that there was insufficient staffing. She never told Mr. Shepard that she was not being accommodated. She did not even mention her alleged restrictions during the meeting. (J. Ex.4, p48, J. Ex.5, Kristy Hibbard Dep. Excerpt, p45-46).

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-6485

(313) 965-7900

---

[1]  Plaintiff also punched in early on several of these dates.

Plaintiff alleges that the facility had a blanket policy that it would not accept or honor restrictions, based on a surreptitious recording of a staff meeting she attended in February 2012—**over four years before she abandoned her job**. During the meeting Andrea Mangold, a former DON, announced that the facility was unable to accommodate some permanent disabilities based on the job descriptions signed by employees when they were hired, including for example, restriction notes that stated an employee could only work for a "half-day." Ms. Mangold stated that there was no change in the facility's policy, and that "we have always worked with people in the past and for some of you, you have a permanent disability and I cannot accommodate the disability." (D. Ex. I, Meeting Tape Transcript). At no point did Ms. Mangold state that the facility would not accept or accommodate disabilities or physician restrictions; she was simply stating that if an employee had restrictions that prevented them from performing their essential job functions, the facility could not provide that employee with accommodations. Regardless, based on Plaintiff's punch clock records, she was accommodated whenever she had valid hour restrictions in place and did not work any significant time over 12 hours. (J. Ex.7). The one and only time Plaintiff worked an hour and a half over, on January 31, 2016, she had no valid work hour restriction in place and the manger, Kristy Hibbard, testified she had no knowledge of any restriction notes.  (J. Ex. 5, p44,56,)

## ARGUMENT

Summary judgment is appropriate where the moving party can show that based on the record presented and taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact as to the plaintiff's claims and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In this case, Plaintiff is unable to establish a genuine issue of material fact regarding her

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

claims of discrimination, failure to accommodate, or retaliation under both the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). As such her case should be dismissed with prejudice.

I.    **Plaintiff Is Unable To Establish a *Prima Facie* Case of Disability Discrimination Under the ADA.**

The "ADA and PWDCRA 'substantially mirror' each other . . . Therefore, claims under both statutes are generally analyzed identically." *Cummings v. Dean Transp.*, *Inc.,* 9 F. Supp. 3d 795, 804-805 (E.D. Mich. 2014)(citations omitted). In order to establish a *prima facie* case of disability discrimination under the ADA, an employee must show "(1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (2004). If Plaintiff is able to establish a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Plaintiff, however, retains the ultimate burden of persuasion. *Id.*

A.    *Plaintiff is not disabled under the ADA.*

"An individual is considered disabled under the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities of such individual, (2) has a record of such impairment, or (3) is regarded by his employer as having such an impairment." *Gruener v Ohio Cas. Ins. Co.,* 510 F3d 661, 664 (6th Cir. 2008); see also 42 U.S.C. § 1202(2). In this case, Plaintiff is unable to establish a *prima facie* case because she is unable to establish that she is disabled and is similarly unable to establish that Defendants regarded her as disabled. It has long been held that under the ADA an employee is not substantially limited in the major life activity of working if he or she can work an eight-hour day, but is not able to work overtime

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

7

because of a physical or mental impairment.  *See Cotter v. Ajilon Servs, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002); *Linser v. Dep't of Mental Health*, 200 U.S. App. LEXIS 25644 (6th Cir. 2000); *Garlock v. Ohio Bell Tel. Co.,* 2015 U.S. Dist. LEXIS 131231 (N.D. Ohio Sep. 29, 2015) [2] . Not only was Plaintiff able to work eight hour days, she was able to work 12 hours a day without issue.  Plaintiff submitted two restriction notes in 2012, which restricted her from working more than 12 hours per shift, without any explanation or diagnoses for the restriction and she never informed Coldwater of any alleged disabilities. Multiple cases have held that an hour's restriction alone is insufficient to establish that an individual suffered from a disability as defined by the ADA.

For instance, in *Azzam v. Baptist Healthcare Affiliates, Inc.,* 855 F. Supp. 2d 653 (W.D. Ky. 2012), the plaintiff was a registered nurse in the Medical-Surgical care unit. RNs were typically required to work eight hour shifts, five days per week, Monday through Friday, and were further required to be available one night during each workweek and weekends, on a rotating basis for on-call purposes. Azzam had suffered stroke-like symptoms while on vacation, and after taking FMLA leave returned to work with a restriction which limited her to five hours of daily work and no on-call time. *Id*. at 656. After accommodating the hours restriction from November 2008 through the end of the year, Azzam's employer met with her to ask her to try "for one schedule of being able to take call or work a normal day." Azzam refused, at which point she was terminated. *Id*. Her discharge papers stated that the reason "for separation was "Dissatisfied w/ Schedule" and that she was "unable to take call which is a requirement for staff RN's in surgery." *Id*. at 657. Azzam suffered from "lingering fatigue and lack of staminate

**Kitch Drutchas
Wagner Valitutti &
Sherbrook**
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

---

[2] D. Ex. K, D. Ex. L

stemming from the stroke/cardiovascular accident that prevented her from working nights and weekends." *Id.* at 660. However, the Court found that the plaintiff did not:

> . . . explain how her fatigue substantially affected her ability to work in comparison to most people in the general population. <u>Besides the reduced hours and no weekend restrictions, Azzam was not limited in her ability to otherwise perform her job as an RN and she did in fact perform her job</u>. Furthermore, Azzam has not shown that she is significantly restricted in finding a comparable nursing position which does not require "call" responsibilities. Accordingly, Azzam does not have an actual disability or a record of such a disability. *Id.* at 661 (emphasis added).

In this case, Plaintiff is similarly unable to establish that she is disabled. <u>It is undisputed that Plaintiff could and did work full time, up to 12 hours a shift, which is sufficient to show that she was not disabled under the ADA</u>. Notably, when the facility switched to some 12 hour schedules, Plaintiff *chose* to work 12 hour shifts despite her alleged inability work more than 12 hours. (J. Ex. 2, p48-49). Plaintiff testified that she "was able to work, like eight hours . . . I have back pain constantly, but I was able to work my eight hours, do my job. And then we went to the 12 hours and I was able to do that, but I mean, by ten hours . . . my pain is getting more severe" but that her pain level depended on the day. (J. Ex. 1, p79-80). She testified that her ability to bend, stand or walk simply depended on if she was "refreshed" or not. (J. Ex. 1, p82). Plaintiff's alleged disability is more akin to aches and pains common in the nursing industry, rather than a substantial limitation on her ability to perform her job. Like the plaintiff in *Azzam*, aside from her (expired) hour restriction notes, Plaintiff was never limited in her ability to perform her job as an LPN, and she did in fact perform her duties. As such, she cannot be considered disabled for purposes of the Act.

In *Doren v. Battle Creek Health Sys.*, 187 F.3d 595 (6th Cir. 1999) the plaintiff was an RN that worked 8-hour shifts in the pediatrics department, and suffered from various conditions, including recurrent tendinitis in multiple joints. She submitted an accommodation request to only

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

work 40 hours per week, which was honored until the hospital changed to 12 hour shifts. After refusing to accept any other nursing jobs in the hospital, as well as refusing to work the 12-hour shift in the pediatrics department, the hospital considered the plaintiff to have voluntarily resigned. *Id.* at 596-97. The Court of Appeals ultimately found that the plaintiff was not disabled under the ADA as despite having "a number of physical limitations" including joint pain, swelling, and fatigue, she had failed to produce sufficient evidence of a disability. The plaintiff did not produce any evidence regarding "the number of pediatrics nursing jobs" that she was excluded from or the "availability of pediatric nursing positions for which she is qualified," and only had conclusory testimony from her doctor that she was precluded from working in most nursing jobs. *Id*. In this case, Plaintiff has similarly be unable to produce evidence of nursing jobs that she is precluded from working, and in fact continues to work as a part-time LPN[3].

In *Garlock*, the plaintiff alleged that he was disabled due to anxiety and panic disorders, which substantially limited his ability to work and think as a Premise Technician. He requested an accommodation of a 40-hour work week, 8-hour work days, and no overtime. *Garlock v. Ohio Bell Tel. Co.,* 2015 U.S. Dist. LEXIS 131231, *2, (N.D. Ohio Sep. 29, 2015). It was undisputed that he was capable of working full time, and did so for several years. The Court found that Garlock was not disabled, as he was unable to show that his alleged impairment substantially limited his ability to perform a broad class of jobs, including his job with Ohio Bell. *Id*. at 12. In addition, the plaintiff failed to offer any evidence that his panic and anxiety disorders impaired his ability to work a 40-hour week, as the only evidence he provided indicated that he merely was unable to work overtime. The Court further noted that the plaintiff's self-serving testimony that his condition was debilitating and that he could not function normally was insufficient to

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

---

[3] Plaintiff's February 26, 2016 pre-hire physical from Lakeland, her current employer, found that she was fully capable of performing the duties of an LPN. (D. Ex. J, Lakeland Records).

show he was disabled, absent supporting medical evidence. *Id.* at 13. In this case, Plaintiff relies solely on expired hour restriction notes to support her disability claim, and has not produced any supporting medical evidence that shows she is substantially limited in her ability to perform a broad class of jobs, much less that she was substantially limited from performing her LPN duties at Coldwater. In *Muthler v. Ann Arbor Machine, Inc.*, 18 F. Supp. 2d 722, 728 (E.D. Mich. 1998) the plaintiff was not considered disabled because his only restriction was that he could not exceed 40 hours of work per week, and he failed to demonstrate that he was unable to perform a class of jobs or a broad range of jobs; he could only demonstrate he was unable to perform the specific job of an assembly manager. In this case, Plaintiff has failed to demonstrate that she is unable to perform *any* job—she simply doesn't want to work overtime. She was able to quickly find a job as a part-time LPN, and in addition is working in a factory. There is simply no evidence that she is limited in her physical or mental abilities in any way.

The case law is clear that an hour restriction is insufficient to establish a disability under the ADA. By her own admission, Plaintiff was able to work for 12 hours and perform her job duties without any issue aside from an increase in her pain as the workday continued. Plaintiff's Complaint states that her various conditions limit her ability walk, stand, bend, and lift repetitively, but she never submitted any physician notes restricting these activities. She testified that her conditions cause muscle and joint pain, and that they limit her ability to walk, for instance, because they make her "pain more severe." (J. Ex. 1, p79). There is no evidence that she is substantially limited in any activity, aside from her self-serving testimony. Plaintiff cannot establish that she is disabled under the ADA.

**B.  Defendants did not perceive Plaintiff as disabled.**

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

Even if Plaintiff is found to be disabled, Defendants did not know about her alleged disability, as her most recent physician's note stated she could work without restrictions. Erin Tuttle, the facility administrator, was unaware of Plaintiff's long expired restrictions until February 8, 2016, after Plaintiff had already walked off the job. (J. Ex. 3, p37-39). Jeannine Hayes, the DON, testified that Plaintiff had submitted return to work notes that stated she could work without restrictions. (J. Ex. 2, p64-65). Regardless, Plaintiff was not subjected to any adverse employment actions, as she has admitted that she voluntarily walked off the job on February 4, 2016, prior to the conclusion of her shift. (J. Ex.1, p129).  She thus voluntarily quit without notice, and abandoned her patients.

### C.   Plaintiff did not suffer any adverse employment actions.

Even if the Court finds that Plaintiff was disabled, she never suffered any adverse employment action, and is thus unable to establish a *prima facie* case. Plaintiff was always accommodated when she had restrictions in place. From 2012 through 2016, Plaintiff worked over 12 hours on only eight occasions, all of which were *de minimis* in nature and likely due to rounding issues. Over the course of four years, Plaintiff worked .25 hours of overtime on seven occasions, many of which were the result of rounding when Plaintiff punched out more than 7 minutes after the hour[4]. On January 31, 2016, Plaintiff was mandated to work an hour and a half over her shift, for a total of 13.5 hours. (J. Ex.7, p000553). Again, there were no restrictions in place for Plaintiff on January 31, 2016, and even if her restrictions were still in effect one overtime shift is not discriminatory or retaliatory in nature. Only repetitive instances could

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

---

[4] On 7/21/12, 12.25 hours. (J. Ex.7, 002548). On 6/9/13, 12.25 hours. (J. Ex.7, 002571). On 2/28/15, 12.25 hours. (J. Ex.7, 002603). On 12/6/15, 12.25 hours. (J. Ex.7, 002619). On 1/14/16, 12.25 hours (J. Ex.7, 002618). On 1/16/16, 12.25 hours (J. Ex.7, p000553). On January 1/25/16, 12.25 hours (J. Ex.7, 000553).

potentially lead to a constructive discharge defense. *See Chavez v. Waterford Sch. Dist.,* 720 F. Supp. 2d 845 (E.D. Mich. 2010). Moreover, Plaintiff was not terminated; she abandoned her job.

Plaintiff will undoubtedly claim that Coldwater had a policy of refusing to accommodate or honor work restrictions; Plaintiff has never produced any evidence in support of this claim, instead relying on the aforementioned surreptitiously tape recorded meeting held by Andrea Mangold four years before Plaintiff abandoned her job. Again, Ms. Mangold was not announcing any policy changes during the meeting, but was merely reiterating the fact that if an employee had restrictions that prevented them from performing their essential job functions, the facility would not be able to accommodate them. Plaintiff will also likely cite a 2015 e-mail chain produced by Defendants between Ms. Tuttle and Hal Nottingham, a former payroll coordinator. In the August 2015 e-mail, they discuss an unnamed employee's restriction note that limited her to 40 hours of work per week, 8 hours per shift. Ms. Tuttle first asked if the employee was involved in a work related injury—it did not, so she told Mr. Nottingham that there was no light duty available. (J. Ex. 9, Tuttle & Nottingham E-mail Chain, J. Ex. 10, Nottingham E-mail). Light duty is a change to the essential functions of a position to allow an employee to get back to work sooner than if they had to perform the essential functions—with or without an accommodation. The ADA allows employers to offer light duty as a means for injured workers on workers' compensation to return to work; the ADA does not require employers to provide permanent light duty. See *Meade v. AT&T Corp., 657 F. App'x 391 (6th Cir. 2016); Hoskins v. Oakland Cty. Sheriff's Dep't, 44 F. Supp. 2d 882, 894 (E.D. Mich. 1999), and Wardia v Campbell County Reg. Justice Dept. Of Corrections, No. 12-5337 (6th Cir. 2013)*[5]. This e-mail chain in no way reflected a blanket policy on work restrictions or accommodations under the

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

---

[5] D. Ex. N, D. Ex. O.

ADA. In addition, courts have previously reasoned that regardless "of the formal or informal policies in place, an employer's actual treatment of a qualified employee will determine whether the employer has satisfied its duties under the ADA . . . to provide a reasonable accommodation to qualified employees." *Kahriman v. Wal-Mart Stores*, 115 F. Supp. 3d 153, 164 (D. Mass. 2015). In this case, Defendants' disability policy was to follow the ADA and any state disability laws. As such, Plaintiff was accommodated when she had a work hour restriction in effect, and the shifts she worked over 12 hours were *de minimis* in nature, as she only worked for an additional 15 minutes. The only shift she worked more than a rounding error over 12 hours was on January 31, 2016, when she worked 1.5 hours over her 12 hour shift—however, she had no restrictions in effect at that time and had not had a valid restriction in place in almost three years.

## II.    Plaintiff has failed to state a claim of Retaliation under the ADA

Plaintiff further alleges that Defendants retaliated against her "by assigning her extra work and constructively discharging her because of her requests for accommodation and numerous internal, and one external, complaints about failure to honor her accommodations. In order to establish a *prima facie* case of retaliation under the ADA, an employee must show that: "1) he engaged in activity protected by the ADA, (2) Defendant knew he engaged in this activity, (3) Defendant subjected him to an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action." *Falcone v. City of Warren*, 581 F. Supp. 2d 841, 846 (E.D. Mich. 2008). In this case, Plaintiff has failed to present any facts or evidence in support of her retaliation claim, and has thus failed state a claim upon which relief can be granted, much less establish a *prima facie* case, and her claim should be dismissed with prejudice.

### A.   *Plaintiff was not engaged in protected activity and did not suffer an adverse employment action.*

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

14

Plaintiff is unable to establish a *prima facie* case because she was not engaged in any protected activity. Under the ADA, "protected activity" typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)(citation omitted). Plaintiff alleges she was retaliated against following her requests for accommodations and "numerous internal, and one external, complaints about failure to honor her accommodations" and that she was "assigned to work an extended shift (beyond twelve hours) on February 4, 2016." (D. Ex. 1, ¶38-40). Plaintiff's Complaint is contradicted by the evidence as well as her own testimony; regardless, none of her conduct would constitute protected activity under the ADA, and Defendants were unaware of any other protected activity she may have engaged in.

Plaintiff often complained verbally about perceived staffing issues, but never her alleged lack of accommodations (J. Ex. 2, p 64). In January 2016, Plaintiff met with Mr. Shepard and Ms. Hibbard in a medical room. During the meeting, Plaintiff testified that she complained that the facility was losing nurses and was short staffed, and that at the end of the meeting she "mentioned" her 12 hour work restriction. (J. Ex. 1, p106-108). Mr. Shepard and Ms. Hibbard both confirmed the meeting happened; however, both testified that although Plaintiff complained about her perception that the facility was short staffed, she never complained about her alleged hour restriction or claim she was not being accommodated. (J. Ex. 4, p48-49, J. Ex. 5, p45-46). She did not complain about working overtime. Even if she had complained about working overtime, she had no restrictions in place, and would essentially have been complaining about management decisions. A complaint or disagreement that is essentially about management decisions is not protected activity. *See e.g., Booker v. Brown & Williamson Tobacco Co., Inc*., 879 F.2d 1304, 1313 (6th Cir 1989). If these types of complaints were permitted, every

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

employment decision by an employer would be subject to challenge under either state or federal civil rights legislation. *Id.* Plaintiff's verbal complaints cannot reasonably be construed to be ADA-protected activity, especially given the fact that Plaintiff is not disabled under the law.

Moreover, Plaintiff was not retaliated against on February 4, 2016. Plaintiff testified that she was told she was possibly being mandated via hearsay, as she was informed by a CNA, who was in turn apparently informed by Erin Marshall, the Unit Manager of a different wing, that Plaintiff was to be mandated. Ultimately, no one was even mandated that day. (J. Ex. 1, p127). When she spoke with the DON, Jeannine Hayes, she told her she would not stay and she was going to leave, thus abandoning her job based off hearsay statements from a third-party. (J. Ex. 1, p122). It is unclear what "formal complaint" Plaintiff is referring to in her Amended Complaint. Plaintiff did not send her internal complaint letter until February 4th or 5th of 2016. (J. Ex.1, p118-119). She did not file an EEOC charge until March 2016 (D. Ex. K, EEOC Charge). Defendants could not have retaliated against her for filing an EEOC charge after she had already long abandoned her position. There is no evidence that anyone at Coldwater knew she contacted the EEOC prior to filing her charge.

Even assuming that, *arguendo*, Plaintiff was engaged in protected activity or that Defendants knew of the protected activity, Plaintiff is unable to establish a *prima facie* case because she did not suffer an adverse employment action. Plaintiff has admitted that she abandoned her job after being informed that she *may* be mandated; she was never assigned an additional shift or hours, and even if she had been, she was not restricted from working over 12 hours since April 2013. As such, she is unable to establish a claim of retaliation under the ADA.

### III.    Plaintiff is Unable to Establish a Prima Facie Case of Discrimination Under the PWDCRA

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

16

As noted above, claims under the ADA and PWDCRA are generally analyzed identically; however, there are subtle differences between the statutes. In order to establish a *prima facie* case of discrimination under the PWDCRA, Plaintiff must show that (1) she is disabled as defined under the act, (2) that the disability is unrelated to her ability to perform her job duties, and (3) that she has been discriminated against in one of the way delineated in the statute. *Peden v. City of Detroit*, 470 Mich. 195, 680 N.W.2d 857 (2004). That said, Plaintiff is similarly unable to maintain a claim of disability discrimination under the PWDCRA, and her claims should be dismissed.

### A. *Plaintiff is not disabled as defined by the PWDCRA*

"Disability" means one or more of the under the PWDRCA, MCL 37.1103(d):

> (i) A determinable physical or mental characteristic of an individual…if the characteristic:
> …substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion . . .
> (iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).

In this case, Plaintiff has not submitted any evidence establishing a disability under the PWDCRA, and was not regarded as disabled by Defendants. Her hour restrictions had expired by April 2013, and were further superseded in September 2015, when she submitted a return to work slip which stated she could work without restrictions. Thus, it is indisputable that she was not disabled at the time of the alleged discrimination, i.e. when she abandoned her job on February 4, 2016.

Under the PWDCRA, not all impairments constitute a disability, and the "mere assertion of diminished capacity does not constitute a disability within the meaning of the [act]." *Chiles v Machine Shop, Inc,* 238 Mich App 462, 474 (1999) (internal citations omitted). Rather, the

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-6485

(313) 965-7900

alleged condition must *substantially limit* one or more major life activities.  *Id.* at 474, 479. A disability generally does not include temporary conditions, as a temporary impairment cannot be considered "substantial" under the PWDCRA. *Id.* at 479-80; *Lown v JJ Eaton Place,* 235 Mich App 721, 733 (1999) (back injuries of limited duration generally do not constitute a disability). Even a two-year impairment has been found to be temporary. *Lown,* 235 Mich App at 733.

As noted, Plaintiff's Amended Complaint alleges that she is disabled due to various alleged conditions, but there is no evidence that she ever informed Defendants of these conditions. Even viewing the evidence in the light most favorable to Plaintiff, her alleged physical impairments while working at Coldwater were temporary in nature, as evidenced by: 1) her PMC hour restrictions expired at her "next office visit", meaning the latest they were in effect was April 2013; 2) she could work more than 12 hours if there was a weather emergency; 3) she returned to work following FMLA leave in September 2015 without any restrictions; 4) Plaintiff was admittedly never limited in her abilities to perform her job aside from working over 12 hours; and 5) Plaintiff admittedly has no restrictions in her current employment as an LPN at a different facility and is working full time at a factory. (J. Ex. 1, p34-35). Moreover, in *Chiles* the court found that the plaintiff did not suffer from a permanent disability where his work restrictions were lifted at the time of the alleged discrimination, and—as Plaintiff did in this case—he continued to perform the same or similar work as he had previously performed. In this case, Plaintiff's restrictions were removed in September 2015 at the latest, and as established by her punch clock records, she only worked significantly over 12 hours on one occasion, January 31, 2016, which was *after* her restrictions expired. Thus, Plaintiff's claims under the PWDCRA should be dismissed as her temporary hour restrictions do not constitute a disability within the meaning of the Act.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

**B. Plaintiff's alleged physical condition did not substantially limit a major life activity.**

In order to prove that she is disabled under the PWDCRA, Plaintiff must prove that the impairment not only affects a major life activity, but that the activity is substantially limited when compared to the average person. *Lown v JJ Eaton Place*, 235 Mich App 721, 731 (1999). To hold that a condition that is relatively minor and widely shared is a "disability" would "do a gross disservice" to those who are truly disabled. *Chiles*, 238 Mich App at 219; *Chimielewski v Xermac, Inc*, 216 Mich App 707, 714-715 (1996). Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or long-term effect. *Stevens v Inland Waters, Inc*, 220 Mich App 212, 218 (1996). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.* at 217-218.

As noted, Michigan courts have held that a temporary impairment does not substantially limit a major life activity. Even if it did, however, there is no evidence that any physical characteristic that Plaintiff had during her employment at Coldwater substantially limited a major life activity—Plaintiff simply could not, albeit briefly, work over 12 hours, which was further softened by the fact that she *could* work over 12 hours if she volunteered to do so. As described in detail above, Plaintiff has failed to identify any substantial limitations on any major life activities. Her only impairment her testimony that her pain increases after prolonged periods, which is a common complaint, not a disability. There is no evidence that her alleged disabilities or impairments have precluded her from participating in any hobbies, from taking care of herself, or even walking. Plaintiff testified, for instance, that "I can't say, like oh, I walked 45 feet today, I'm done" and "my bending part . . . I can't give you an hour, hour three, hour four, but when I

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

19

go to bend over, I have difficulty with that. I mean, it just depends. Am I refreshed? You know, I can bend over. After a long period of time, I have a hard time putting my underwear on." (J. Ex.1, p82). This self-serving testimony alone cannot establish that Plaintiff was substantially limited in any major life activity.

If an individual cannot demonstrate a substantial limitation with respect to any other major life activity, his/her ability to perform the major life activity of working may be considered. *Lown*, 235 Mich App at 735. "An impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease that individual's ability to obtain satisfactory employment elsewhere, does not substantially limit the major life activity of working." *Stevens*, 220 Mich App at 218. In other words, a plaintiff must show that she is significantly restricted in her ability to perform at least a wide range of jobs. *Chiles*, 238 Mich App at 478. A plaintiff's ability to obtain subsequent employment and work without any medical restrictions demonstrates that that an alleged condition does not substantially limit the major life activity of working. *Galford v. P.R.S. Contracting, INC.,* 2004 Mich. App. LEXIS 1336 *11 *(Ct. App. May 27, 2004)*[6].

In this case, Plaintiff testified that she could work 12 hours. (J. Ex. 1, p79-80). Even then, it does not appear that the hours alone affected her abilities, as she testified that her abilities were limited "depending on . . . how crazy the day was." By Plaintiff's own admission, none of her alleged conditions substantially limited her ability to perform her job; they just caused her to have more pain as the work day progressed—even lifting patients, which she admittedly did not do often, only hurt her after "a long period of time." (J. Ex.1, p83). These are common complaints of an LPN in a large skilled-nursing facility, as well as common for those that work

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

---

[6] D. Ex. P.

12 hour days. As noted by the court in *Chiles*, to hold that a widely shared condition that is relatively minor is a disability is a "gross disservice" to those who are truly disabled. Moreover, Plaintiff has failed to provide any evidence that she was unable to perform the job of an LPN, let alone that her alleged disabilities significantly decreased her ability to obtain satisfactory employment in a broad range of jobs. Plaintiff was almost immediately able to obtain a job as an LPN following her job abandonment, albeit on a part time basis. She also currently works at a factory. Plaintiff does not have any restrictions in place at her current jobs. *See Kolpas v G D Searle & Co,* 959 F Supp 525, 530 (ND Ill 1997) ("A disability is a part of someone that follows that person to the next job.").

Even assuming, *arguendo*, that Plaintiff's hour restrictions had not expired at the time of her job abandonment, the hour restrictions still did not impose a substantial limitation on the major life activity of work. In *Ayer,* the court held that a work restriction requiring plaintiff to work 40 hours per week as opposed to his normal 60-70 hours to avoid anxiety that could exacerbate a heart condition was insufficient to show that plaintiff had a disability. *Ayer v. Hare Express, Inc*., No. 243228, 2004 Mich. App. LEXIS 104 at *5 (Ct. App. Jan. 15, 2004)[7]. It did not constitute a substantial limitation on the major life activity of working as evidence by his ability to work as a truck driver for a different company (i.e. only a particular job was affected). *Id.* at *6-8; *Kolpas*, 959 at 529.  Plaintiff's 12 hour per day work restriction was even less burdensome than in *Ayer*, where the plaintiff could not continue working at his employer because he could not work over 40 hours. In this case, Plaintiff was able to continue working at Coldwater for years after the submission of her initial 12 hour work restriction without issue until she abandoned her job, and only substantially worked over 12 hours on one occasion, when

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

[7] D. Ex. Q

she had no restrictions in place. As Plaintiff cannot demonstrate that she was substantially limited in any major life activity, she is not disabled under the PWDCRA, and her claim must be dismissed.

### C. *Plaintiff cannot establish that she was perceived as disabled.*

Plaintiff is further unable to establish that she was perceived as disabled by Defendants. In order to establish a "regarded as" disabled claim, a plaintiff must prove that her employer perceived that she was actually disabled within the meaning of the statute, not that the employer merely believed that she was impaired. *Chiles*, *supra* at 475. There is no evidence that any of Plaintiff's supervisors perceived her as disabled within the meaning of the PWDCRA. The Administrator, Erin Tuttle, was unaware of Plaintiff's alleged conditions and restrictions until February 8, 2016, after Plaintiff had already abandoned her job. (J. Ex. 3, p37-39). Ms. Hayes likewise did not considered Plaintiff disabled and was unaware of her restrictions until Plaintiff abandoned her job after being told she *might* be mandated. Ms. Hayes knew that Plaintiff had submitted return to work notes that stated she could work without restrictions. (J. Ex. 2, p64-65). Unit Manager Kristy Hibbard, who mandated Plaintiff on January 31, 2016, testified she did not know Plaintiff had restrictions or that she was allegedly disabled. (J. Ex. 5, p56, 89). For the same reasons set forth regarding Plaintiff's claim of actual disability, her expired restrictions alone are insufficient to show that Defendants regarded her as substantially limited in any major life activity. Therefore, her claims under the PWDCRA should be dismissed.

### IV.    Plaintiff Was Not Discriminated Against Under the PWDCRA

Even assuming, *arguendo*, that Plaintiff can establish she was disabled under the PWDCRA, she is unable to establish a claim of discrimination. Plaintiff alleges that Defendants discriminated against her by "assigning her extra work, and constructively terminating her."

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

However, there is no evidence that Plaintiff was ever assigned additional work. Plaintiff is likely referring to the fact that she was mandated on January 31, 2016, and then was told she *may* be mandated again on February 4, 2016. When Plaintiff was told she may be mandated, Coldwater had multiple calls out in an effort to find a volunteer. In fact, no one was mandated to work on February 4, 2016. (J. Ex.1, p127). In addition, constructive discharge is not a cause of action, but is a defense to the assertion that a plaintiff has no claim based on voluntary resignation. *Vagts v Perry Drugs Stores, Inc,* 204 Mich App 481, 487 (1994).  It is established where "an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation" or, in other words, "working conditions become so difficult or unpleasant that a reasonable person…would feel compelled to resign." *Id.*  If an employee leaves her job when she has legitimate options for continued employment, she is precluded from asserting constructive discharge.  *LaPointe v United Autoworkers Local 600,* 103 F3d 485, 489 (1996).

At the time of her job abandonment Plaintiff did not have any work restrictions in place. Even assuming that her hour restriction had not expired, Plaintiff was not assigned additional work and was not discriminated against. From 2012 through her abandonment in 2016, Plaintiff worked over 12 hours on eight occasions, seven of which were only for 12.25 hours and were likely the result of her failing to timely punch out. The one occasion she worked significantly over 12 hours was on January 31, 2016, when she worked for 13.5 hours. Even if her restrictions were in place on those occasions, working outside of one's restriction on essentially one occasion would not lead a reasonable individual to abandon her patients in the middle of a shift after being told she *may* be required to work overtime. *See Chavez v. Waterford Sch. Dist.,* 720 F.Supp.2d 845, 859 (E.D. Mich. 2010).

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

**V.    Plaintiff Cannot Succeed on a Failure to Accommodate Claim Under the PWDCRA As She Never Requested an Accommodation in Writing.**

Plaintiff is unable to establish a failure to accommodate claim. An employer has no duty to accommodate an employee who is not disabled within the meaning of PWDCRA, which Plaintiff is not. *Harris v. Bormans, Inc.* 170 Mich. App. 836, 839-40 (1998). Plaintiff's failure to accommodate claims must also fail as she did not comply with the statutory prerequisites for such a claim. MCL 37.1210(18) requires that an employee must notify an employer in writing of the need for an accommodation within182 days of the date the person with a disability knew or reasonably should have known that an accommodation was needed. In addition, the written notice must provide an explanation as to why the requested accommodation is needed. *Bageris v. Brandon Township*, 264 Mich. App. 156, 164-66 (2004). The most recent physician's note Plaintiff submitted with restrictions was from PMC and merely stated she could only work for 12 hours with the ability to volunteer for more hours, but did not provide any explanation for the restriction. A physician's note providing that an employee has certain work restrictions, however, is insufficient to constitute a request for accommodation. *Ayer*, *supra* at *11-12. Moreover, the most recent physician's note in her file explicitly stated she could work without restrictions, and there is no evidence of any other written requests for accommodation in Plaintiff's personnel file. Accordingly, any claim for failure to accommodate under the PWDRCA is precluded.

**VI.    Plaintiff Has Failed To State a Claim of Retaliation Under the PWDCRA**

There is similarly no basis for Plaintiff's retaliation claim under the PWDCRA. In order to establish a *prima facie* case of retaliation under the PWDCRA, plaintiff must show that 1) she engaged in protected activity; 2) defendants knew of the protected activity; 3) defendants took an employment action adverse to plaintiff; and 4) there is a causal connection between the protected

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

24

activity and the adverse employment action. *Aho v. Dep't of Corrections*, 264 Mich App 281, 288-89 (2004). In this case, Plaintiff appears to assert that she engaged in protected activity by complaining to Jeff Shepard and Kristy Hibbard on or about January 31, 2016 about the alleged failure to accommodate her. (D. Ex. A, ¶ 31). However, Plaintiff testified that when she spoke with Mr. Shepard and Ms. Hibbard she complained that they were short staffed and were losing nurses, and that at the end she mentioned she had a 12 hour restriction. (J. Ex., 1, p106-107). Plaintiff at best is alleging that she opposed a violation of the PWDCRA when she complained to Shepard and Hibbard about her restriction—however, both Shepard and Hibbard deny that Plaintiff ever complained about her restrictions not being honored. Importantly, Plaintiff did not have any medical restrictions in place at the time. Moreover, even if Plaintiff was engaged in protected activity, she did not suffer an adverse employment action, as she willfully abandoned her job, and she has not offered any evidence of any other adverse employment actions. Thus, her claims under the PWDCRA should be dismissed.

WHEREFORE, Defendants respectfully request that this honorable Court GRANT Defendants' Motion for Summary Judgment, dismiss Plaintiff's Complaint with prejudice, and award costs and attorney fees to these Defendants most unjustly sustained.

Respectfully submitted,
KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By:    /s/Zeth D. Hearld
Karen B. Berkery P38698
Zeth D. Hearld P79725
Attorneys for Defendants Laurel Health Care
Company, and Oak Park Health Care
Investors Of Coldwater, Inc.
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
313-965-7448
zeth.hearld@kitch.com

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

Dated:  January 31, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Sarah Prescott, Jennifer Salvatore and Nakisha Chaney.

s/Zeth D. Hearld
ZETH D. HEARLD P79725
KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
313-965-7846
zeth.hearld@kitch.com

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900